UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JACKIE HOSANG LAWSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 19-11222-DPW |
| FMR LLC, dba FIDELITY INVESTMENTS; | ) | |
| FMR CORP., dba FIDELITY | ) | |
| INVESTMENTS; and FIDELITY | ) | |
| BROKERAGE SERVICES LLC, dba | ) | |
| FIDELITY INVESTMENTS, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER
August 9, 2021

Plaintiff Jackie Hosang Lawson has returned to this Court *pro se* with a reconfigured action ("*Lawson II*") in the wake of the ultimately unsuccessful pursuit of wrongful discharge and whistleblower retaliation claims she undertook when represented by counsel in an earlier action ("*Lawson I*") against the same defendants (collectively "Fidelity"). *Lawson II* is framed as a putative class action, echoing and amplifying claims arising from the facts and conduct underlying the adverse 2017 final judgment rendered in *Lawson I*. Fidelity has moved to dismiss *Lawson II*.

## I. LITIGATION CONTEXT

Because Fidelity's overarching contention is that Ms. Lawson's claims in *Lawson II* are precluded by the final judgment

adversely concluding *Lawson I*, I will review in some detail the factual and procedural background of Ms. Lawson's litigation against Fidelity in *Lawson I* and *Lawson II*.

**A.    *Lawson I***

In *Lawson I*, *Lawson* v. *FMR LLC*, Dkt. No. 1:08-cv-10466 (D. Mass. Mar 20, 2008), Ms. Lawson brought suit in 2008 against FMR Corp.; its successor, FMR LLC; and their affiliate, Fidelity Brokerage Services, LLC, alleging (i) retaliation under the Sarbanes-Oxley Act, 18 U.S.C. § 1514A; and (ii) common law wrongful discharge.  Both claims arose from her period of employment at Fidelity, during which she reported to her supervisors and to the United States Securities and Exchange Commission ("SEC") potential fraud against shareholders of Fidelity funds as a result of certain expense and cost allocation methodologies she believed to be improper.[1]  Ms. Lawson alleged that Fidelity retaliated against her because of her whistleblowing activities and that she was constructively

---

[1] Specifically, Ms. Lawson reported six improprieties to Fidelity supervisors: (1) inaccuracies in the expenses for "Guidance Interactions" for investment advice to the public; (2) improper retention of 12b-1 fees; (3) questionable methodology used by PI Finance, one of three main companies in Fidelity Brokerage; (4) PI Finance's questionable switch of source system; (5) questionable methodology for allocating internet expenses; (6) questionable methodology applied to the PI Back Office Group. *See Lawson* v. *FMR LLC*, 724 F. Supp. 2d 141, 145 (D. Mass. 2010).

discharged.  Her employment with Fidelity ended on September 21, 2007.

Ms. Lawson filed complaints with the Occupational Safety and Health Administration ("OSHA") of the Department of Labor, the agency administering the retaliation complaint under the Sarbanes-Oxley Act, on December 20, 2006, April 24, 2007, September 14, 2007, and November 9, 2007.  On January 3, 2008, she gave notice to OSHA that she intended to file an action in federal court, initiating years of litigation in *Lawson I* ultimately resolved by the final judgment I entered in 2017 as to which appellate challenges were exhausted in 2019.

Fidelity vigorously challenged Ms. Lawson's pleadings in *Lawson* I from the outset but she successfully overcame those challenges in a signal decision by the Supreme Court permitting her to pursue her case on a factual basis.  When Fidelity mounted an attack before me on her pleadings as refined in an Amended Complaint, I denied Fidelity's motion to dismiss, holding that she had properly alleged a violation of the Sarbanes-Oxley Act because — although Fidelity was not a publicly held employer — I concluded that the Act also covered employees of certain privately held entities. *Lawson* v. *FMR LLC*,

724 F. Supp. 2d 141, 162 (D. Mass. 2010).[2]  Recognizing the unsettled but determinative quality of my conclusion, I took the unusual step on Fidelity's motion of certifying the question for appeal, *Lawson* v. *FMR LLC*, 724 F. Supp. 167 (D. Mass. 2010). The First Circuit disagreed. *Lawson* v. *FMR LLC*, 670 F.3d 61, 68 (1st Cir. 2012).  The Supreme Court reversed the Court of Appeals and remanded, concluding that Sarbanes-Oxley whistleblower protections extended to employees of private contractors and subcontractors serving public companies. *Lawson* v. *FMR LLC*, 571 U.S. 429, 433 (2014).

At the trial I conducted on remand, the jury rejected Ms. Lawson's Sarbanes-Oxley claims on the merits.  While simultaneously pressing an appeal from that judgment to the First Circuit, Ms. Lawson also moved for a partial award of attorneys fees related to interlocutory success on the pleadings issue before the Supreme Court.  I declined to award fees because Ms. Lawson was not ultimately the prevailing party in the litigation, *Lawson* v. *FMR LLC,* 320 F. Supp 3d 249 (D. Mass. 2018).  The First Circuit upheld the judgment and the denial of

---

[2] I did, however, dismiss Ms. Lawson's common law wrongful discharge claim, concluding that she could not seek contemporaneous remedies for a wrongful discharge when a statutory scheme, such as the Sarbanes-Oxley Act, provides remedies for the same conduct.  *Lawson* v. *FMR, LLC*, 724 F. Supp. 2d 141, 165-67 (D. Mass. 2010).

attorneys fees on appeal.  *Lawson v. FMR LLC,* No. 17-2220, 2019
WL 11879029 (1st Cir. Mar. 18, 2019).  The Supreme Court denied
Ms. Lawson's petition for certiorari, *Lawson* v. *FMR LLC*, 140
S. Ct. 228 (2019) (mem.), bringing finality to *Lawson I*.

**B.    *Lawson II***

Apart from recounting the facts that were at issue in
*Lawson I* concerning the allegedly fraudulent improprieties she
reported to supervisors at Fidelity, *see supra* note 1, and the
retaliation she says she faced after whistleblowing about them,
Ms. Lawson now further alleges the following in *Lawson II*:

She claims that Fidelity interfered with OSHA's scheduled
investigation in 2007.  Based on FOIA documents Ms. Lawson
received on November 14, 2018, she alleges collusion between
Fidelity's counsel and OSHA to delay the investigation.  [Dkt.
No. 1, ¶¶ 87, 104].  Ms. Lawson appears also to be accusing OSHA
of negligence when withholding documents in Ms. Lawson's FOIA
request, suggesting improper influence by Fidelity.  *Id.* ¶¶ 100,
102.

In addition, Ms. Lawson alleges collusion between Fidelity
and the SEC.  She claims that delay by the SEC in response to
her FOIA document request demonstrates its "association-in-fact"
with Fidelity in carrying out fraud.  *Id.* ¶ 119.  Ms. Lawson
suggests that a former Fidelity employee, John Farinacci, who

came to the SEC, may have "played any role in the interference of [her] FOIA request." *Id.* ¶ 122.

Finally, she alleges misconduct by Fidelity's counsel during the *Lawson I* proceeding; specifically, she says they wrongfully withheld documents during discovery, *id.* ¶¶ 278, 293, made misrepresentations and untruthful statements, *id.* ¶¶ 326, 279-83, and engaged in witness tampering by improperly contacting Ms. Lawson's witnesses, intimidating them during depositions, and causing several to refuse to testify, *id.* ¶ 333–343.

The repackaging in *Lawson II* of claims having their origins in *Lawson I*, is most elaborately undertaken through new Counts styled under the civil dimension to the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. 1962(a) – (d). Although the overarching challenge Fidelity mounts to Ms. Lawson's pleading of *Lawson II* is directed to the question of claim preclusion, a close analysis of the RICO counts and their alleged deficiencies provides the opportunity for a fine-grained consideration of the nature of her current claims. Consequently, after addressing certain threshold procedural questions in Part II, I will begin this Memorandum's claim analysis in Part III with a granular consideration of the RICO claims, including the impact of claim preclusion principles on

them, before turning to the impact of claim preclusion
principles on the remaining non-RICO counts.  That consideration
satisfies me that Fidelity's motion to dismiss *Lawson II* should
be granted.

## II. THRESHOLD PROCEDURAL QUESTIONS

Fidelity's motion to dismiss before me requires sequential
consideration of two procedural questions at the threshold.

### A.   *Is It Proper to Consider a Motion to Dismiss Before Class Certification is Addressed?*

Initially, I address Ms. Lawson's objection to Fidelity's
filing of its motion to dismiss pursuant to Fed. R. Civ. P.
12(b)(6) before class certification of this action under Fed. R.
Civ. P. 23(c) has been addressed.[3]  She argues that I must
consider her class certification before the 12(b)(6) motion to
dismiss.[4]  I do not agree.

_____

[3] I note that Ms. Lawson is a *pro se* litigant in this action.
She has not as yet proposed any counsel to be appointed under
Fed. R. Civ. P. 23(g).  Thus, even if I were to consider class
certification at this point, the putative plaintiff class lacks
counsel and consequently could not be certified.

[4] Ms. Lawson also takes issue with Fidelity's citation in its
submissions to a secondary source.  In its Memorandum in support
of the motion to dismiss, Fidelity references B. ROTHSTEIN & T.
WILLGING, MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES 9 (Fed.
Jud. Ctr. 3d ed. 2010) ("Given the flexibility in the rules, the
most efficient practice is to rule on motions to dismiss or for
summary judgment before addressing class certification.").  The
FJC pocket guide correctly frames the legal analysis I use in
this Memorandum and Order, although it is obviously not primary
source material or a judicial holding.

It is well within a district court judge's discretion to dispose of a motion to dismiss before acting on class certification.  As the First Circuit has observed, "[t]he Civil Rules speak of the need to address class certification at 'an early practicable time.'  Fed. R. Civ. P. 23(c)(1)(A).[5]  The word 'practicable' imports some leeway in determining the timing of such a decision."  *Danny B. ex rel. Elliott* v. *Raimondo*, 784 F.3d 825, 837 (1st Cir. 2015).  The First Circuit thus has recognized that Rule 23 itself provides a judge with flexibility to choose whether to defer the issue of class certification until after summary judgment.  *Id.* at 837-38.

The exercise of discretion in reserving the class certification question is informed by two factors: first, whether an early resolution on the merits "protect[s] both the parties and the court from needless and costly further litigation," *Wright* v. *Schock*, 742 F.2d 541, 544 (9th Cir. 1984); and second, whether the ruling would prejudice any of the parties, *id.* at 545.  Here, both factors favor addressing the motion to dismiss before certifying the class.

---

[5] Rule 23(c)(1)(A) provides:
    . . . .
    *(1)  Certification Order.*
        (A) *Time to Issue.* At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action.

First, because, as I conclude below, Ms. Lawson's entire complaint must be dismissed, the costly determination of class treatment for any claims of other Fidelity brokerage account holders across the nation is avoided. *See Foti* v. *NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 647 n.2 (S.D.N.Y. 2006) ("[C]onsideration of the Motion to Dismiss at this time is appropriate, particularly given the considerable expense and ... time of dealing with what is currently requested as a nationwide class that would include tens of millions of people when certain issues may be able to be resolved as a matter of law.").

Second, because I dismiss Ms. Lawson's complaint based on factual circumstances specific to her, there is no unfair prejudice to Ms. Lawson.  Even if the class were certified, she herself could not prevail on the merits for the reasons explained in this Memorandum.  Indeed, such prejudice as might arise from this sequencing would actually be experienced by Fidelity, since it can at this point only obtain favorable preclusive judgment against the named plaintiff, Ms. Lawson, and hence cannot benefit from the broader claim-preclusive effect of a class action judgment as to all class members.  Because Fidelity has initiated and effectively consented to this approach by filing the motion to dismiss now before me without requesting class certification, no cognizable concern of

prejudice arises here.  *See Rodriguez* v. *Banco Cent.*, 790 F.2d 172, 175 (1st Cir. 1986).

**B.**   ***Would Granting the Current Motion to Dismiss Affect Other Potential Class Members in this Case?***

Turning to the potential for prejudice to putative but as yet uncertified class members, I find Ms. Lawson seems mistakenly to contend that considering this motion to dismiss as an individual action may somehow unfairly implicate the rights of other putative class members.  [Dkt. No. 16, 11].  However, without class certification, any ruling provided by disposition of the current motion binds only the named parties before me. *See Richards* v. *Jefferson Cty.*, 517 U.S. 793, 799-802 (1996); Fed. R. Civ. P. 23(c)(2).  The sole named plaintiff is Ms. Lawson.  *See generally United* States v. *Sanchez*-Gomez, 138 S. Ct. 1532, 1538 (2018) (observing that class action is "exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." (citation omitted)).  My ruling on the motion to dismiss will have no preclusive effect whatsoever on nonparties, such as potential class members.  *See Wright*, 742 F.2d at 544.

\*   \*   \*

I conclude at the outset it is both within my authority and appropriate as a matter of discretion in this case to take up Fidelity's motion to dismiss as to Ms. Lawson's claims without

10

first deciding the question of class certification.

### III. CLAIM ANALYSIS

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 559 (2007). On a motion to dismiss, I examine the record "accepting all well-plead facts in the complaint as true, and drawing all reasonable inferences in favor of the plaintiff." *Gilbert* v. *City of Chicopee*, 915 F.3d 74, 80 (1st Cir. 2019) (citation omitted).

The RICO counts in *Lawson II* are essentially amplifications of the original Sarbanes-Oxley claims made in *Lawson I*.  Their structure and intent provide a useful prelude to consideration of the more muted but, for purposes of claim preclusion analysis, similar claims made in the non-RICO counts of *Lawson II*.

**A.   *RICO Counts I to IV***

> 1.   Six of the Alleged RICO Predicate Offenses Do Not Qualify As Such

Counts I to IV of the *Lawson II* complaint allege violations of separate subsections under RICO, specifically 18 U.S.C. § 1962(a)-(d).  [Dkt. No. 1, ¶¶ 416-462].  To sustain any of these four RICO counts, Ms. Lawson must allege a pattern of "racketeering activity," defined by the "exhaustive list" of

predicate offenses in 18 U.S.C. § 1961(1).  *Beck* v. *Prupis*, 529
U.S. 494, 497 & n.2 (2000).  Fidelity is correct that six of the
alleged predicate offenses Ms. Lawson raises in the *Lawson II*
complaint do not qualify as "racketeering activity" because they
are not expressly listed under § 1961(1).  These are (a)
violation of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A; (b)
obstruction of an examination of a financial institution, 18
U.S.C. § 1517; (c) false declarations before a grand jury or
court, 18 U.S.C. § 1623; (d) violation of the Investment
Advisers Act of 1940; (e) violation of the Investment Company
Act of 1940; and (f) violation of the Securities Exchange Act of
1934.

Consequently, I will analyze the RICO counts by considering
only the remaining predicate offenses Ms. Lawson alleges: mail
and wire fraud, 18 U.S.C. §§ 1341, 1343; obstruction of justice,
18 U.S.C. § 1503; and witness tampering and retaliation, 18
U.S.C. §§ 1512, 1513(e).  These are the only offenses she
alleges included in the exhaustive list of predicates found in §
1961(1), which could conceivably support the RICO counts.

2.  Most of Ms. Lawson's Alleged Injuries Are Either
    Untimely or Not Cognizable Under RICO

In order to examine the substance of the alleged predicate
offenses which could support the RICO counts, I next consider
whether Ms. Lawson's RICO counts are time barred and whether her

12

alleged injuries are cognizable.  I begin with the general
principles governing timeliness in subsection a. and the nature
of cognizable injuries in subsection b. before turning to the
application of those principles to Ms. Lawson's allegations in
subsection c.

> a.   *Timeliness*

Although the RICO statute is silent on the matter, the
Supreme Court has established a four-year statute of limitations
for civil RICO actions. *Agency Holding Corp.* v. *Malley-Duff &
Assocs., Inc.*, 483 U.S. 143, 152 (1987).  The clock begins to
run "when a plaintiff knew or should have known of his injury".
*Rodriguez* v. *Banco Cent.*, 917 F.2d 664, 666 (1st Cir. 1990).
This means the statute of limitations can be triggered before
the plaintiff knows of a *pattern* of injurious practice. *Rotella*
v. *Wood*, 528 U.S. 549, 558 (2000) (eliminating the possibility
that the statute of limitations clock starts only when a RICO
plaintiff discovers a pattern of injurious practice but leaving
open the possibility that the clock starts either with injury or
reasonable discovery).  In this connection, a new predicate act
can be used to obtain recovery for injuries related to that new
predicate act, but cannot be used as a "bootstrap to recover for
injuries caused by other earlier predicate acts that took place

outside the limitations period." *Klehr* v. *A.O. Smith Corp.*, 521 U.S. 179, 190 (1997).

        *b.  Cognizable Nature of Injury*

    Not every injury is cognizable under RICO.  A threshold pleading requirement for a RICO cause of action is "whether the plaintiff has made out a claim of 'injury' to her 'business or property.'"  *DeMauro* v. *DeMauro*, 115 F.3d 94, 96 (1st Cir. 1997) (quoting 18 U.S.C. § 1964(c)).  The "injury pled must be a 'concrete financial loss and not mere injury to a valuable intangible property interest.'"  *Crimson Galeria Ltd. P'ship* v. *Healthy Pharms, Inc.*, 337 F. Supp. 3d 20, 37-38 (D. Mass. 2018) (quoting *Maio* v. *Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000)).  By the same token, the claimed injury cannot be hypothetical or speculative.  *Id.* at 38; *DeMauro*, 115 F.3d at 97-98 (citing *First Nationwide Bank* v. *Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994) ("[A]s a general rule, a cause of action does not accrue under RICO until the amount of damages becomes clear and definite.") (alteration in original))).

        *c.  Application*

    Applying these principles to the *Lawson II* complaint, I must evaluate Ms. Lawson's alleged injuries separately and consider as to each whether it is timely or cognizable.

                i.   The economic loss injuries claimed
                    are not timely

Ms. Lawson alleges economic losses that include a "lower value of shareholder holdings [and] lower return on investments." [Dkt. No. 1, ¶ 364]. These injuries, Ms. Lawson claims, are a result of Fidelity's alleged shareholder fraud. [*Id.* ¶ 362.] Assuming they are cognizable property injuries, they are not timely under RICO.

Before she left Fidelity in 2007, Ms. Lawson both reported the alleged fraudulent practices to the authorities and also held an investment portfolio with Fidelity in her own right valued at over half a million dollars. [*Id.* ¶ 49.] Her knowledge up until 2007, as detailed in her complaints in both *Lawson I* and *Lawson II*, demonstrates that she knew of injury caused by the alleged fraud to her portfolio holdings and returns at the time. In other words, Ms. Lawson necessarily discovered this economic injury to her investment in 2007 at the latest. Because *Lawson II* was filed on May 31, 2019, it is well beyond the four-year statute of limitations.[6] No equitable

---

[6] A variant to the economic injury Ms. Lawson claims is back pay "estimated at $3.8 million dollars." [Dkt. No. 1 ¶ 370.] This is similarly untimely. Ms. Lawson's loss of employment at Fidelity was at the core of the *Lawson I* dispute. Ms. Lawson plainly knew of this injury at least by March 20, 2008 when she filed *Lawson I*, alleging wrongful discharge. The timing again exceeds the statute of limitations.

doctrine tolls that four-year time bar.[7]

        ii.   The non-economic injuries are not cognizable

Ms. Lawson claims "reputational harm" from the statements Fidelity made about her underperformance during the *Lawson I* proceeding.  [*Id.* ¶ 371-76.]  Even assuming it is timely, this type of personal injury is not cognizable.  The restrictive wording of the RICO statute, i.e., "injured in [her] business or property," 18 U.S.C. § 1964, "exclude[s] personal injuries suffered." *Reiter* v. *Sonotone Corp.*, 442 U.S. 330, 339 (1979).  Courts have consistently held that "injury to [one's] reputation, dignity and emotional damages are not the type of injuries redressable by [RICO]." *Tal* v. *Hogan*, 453 F.3d 1244, 1254 (10th Cir. 2006); *see also Genty* v. *RTC*, 937 F.2d 899, 918 (3d Cir. 1991) (RICO does not recognize "physical or emotional harm to a *person*"); *Moore* v. *Eli Lilly & Co.*, 626 F. Supp. 365, 367 (D. Mass. 1986).  Accordingly, the reputational injury Ms. Lawson alleges cannot sustain a plausible claim under RICO, let

---

[7] Ms. Lawson in her response argues that even if her claims exceed the four-year statute of limitations, the doctrine of fraudulent concealment applies here to toll the time.  But one of the conditions to trigger this doctrine is the "failure of the claimant to discover, within the limitations period, the operative facts which form the basis of the cause of action." *Álvarez-Maurás* v. *Banco Popular of P.R.*, 919 F.3d 617, 626 (1st Cir. 2019) (citation omitted).  As an insider who claimed in *Lawson I* to have uncovered Fidelity's fraud scheme, Ms. Lawson cannot rely upon the fraudulent concealment doctrine to avoid the statute of limitations in *Lawson II*.

alone restart the statute of limitations clock.

Ms. Lawson also alleges unspecified "considerable harms" due to Fidelity's interference with the OSHA investigation and "more injury" as a result of OSHA's refusal to testify in *Lawson I*. [Dkt. No. 1, ¶¶ 367, 369]. These are not cognizable injuries under RICO. A plaintiff must plead "concrete financial loss" to "business or property" rather than speculative and undefined damages. *Crimson Galeria Ltd. P'ship*, 337 F. Supp. 3d at 37-38. The interference claim does not do so.

As to the claimed "occupational harm" from obstruction of the Department of Labor's "critical role in enhancing the objectives of [Fidelity's alleged scheme]," Ms. Lawson merely lists similar kinds of injuries to those discussed above: "loss of employment, long-term suffering, and lack of remedies." [Dkt. No. 1 ¶ 368.] Any injuries related to Ms. Lawson's loss of employment at Fidelity were sustained well after the statute of limitations had run. Emotional suffering and lack of remedies for non-economic personal injuries do not give rise to a RICO claim.

                iii. Certain "civil litigation loss" injuries may be timely and cognizable

Ms. Lawson pleads "civil litigation loss." [Complaint ¶¶ 365-66]. Neither her complaint nor her briefing make clear what she means by civil litigation loss, but her argument seems to be

that Fidelity's obstruction of justice and witness intimidation caused her to lose on the merits of *Lawson I*.  She seems to be arguing that she is entitled to damages because she would have won on the merits but for Fidelity's actions.  This theory is for all intents and purposes entirely speculative.[8]

Reading her *pro se* complaint liberally, however, I am prepared to indulge the speculation Ms. Lawson may have meant she is owed litigation expenses and legal fees incurred in *Lawson I*.  Such economic damages would be concrete and quantifiable.  Such costs incurred in a prior concluded litigation are regarded as injury to "business or property." *See, e.g.*, *Bankers Tr. Co.* v. Rhoades, 859 F.2d 1096, 1105 (2d Cir 1988) (holding that legal fees "incurred in fighting defendants' frivolous lawsuits" and "in overcoming bribe-induced decisions in a similar lawsuit" are recoverable under RICO); *Malley-Duff & Assocs., Inc.* v. *Crown Life Ins. Co.*, 792 F.2d 341, 355 (3d Cir. 1986), *aff'd sub nom. Agency Holding Corp.*,

---

[8] Ms. Lawson could, of course, have filed a motion for new trial under Rule 59 or relief from the final judgment under Rule 60(b)(3), and then sought to recover the legal fees in connection with these proceedings.  Both rules, however, impose time limits long since exceeded. Fed. R. Civ. P. 59(b) (28 days after entry of judgment); Fed. R. Civ. P. 60(c)(1) (one year after entry of judgment or order or date of proceeding). Moreover, as discussed below, the instances of misconduct that Ms. Lawson alleges caused her "litigation loss" were all known to her at the time.

483 U.S. 143) (holding that "great expenses, delays and inconvenience" in pursuing prior litigation due to alleged obstruction of justice "were a sufficient pleading of injury to business or property" under RICO).[9]

The only timely and cognizable RICO injury conceivably alleged in the *Lawson II* complaint is the total litigation expense incurred in *Lawson I*. Consequently, I turn to the related requirement for sustaining a RICO claim: that the injury complained of be caused by a RICO violation.

>    3.   The Pertinent Predicate Offenses Are Not the Proximate
>         Cause of The Litigation Expenses Injury Ms. Lawson
>         Alleges

RICO provides a private right of action only to a "person injured in h[er] business or property *by reason of* a violation of section 1962." 18 U.S.C. § 1964(c) (emphasis added). Under this statutory limitation, a RICO violation must be the proximate cause of the injury. *Holmes* v. *Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992). In order to receive relief under

---

[9]   Ms. Lawson also contends that Fidelity made "many false and misleading statements in this Court" which "caused and continue to cause substantial damages to the Plaintiff." These statements appear to be protected under the litigation privilege. *Riverdale Mills Corp.* v. *Cavatorta N. Am., Inc.*, 189 F. Supp. 3d 317, 321 (D. Mass. 2016). In any event, this is a reputational harm, and harm to reputation is not cognizable injury under RICO.

RICO, a plaintiff must establish such a "direct injury." *Sterling Suffolk Racecourse, LLC* v. *Wynn Resorts, Ltd.*, 990 F.3d 31, 35 (1st Cir. 2021). Ms. Lawson fails to satisfy this causation requirement as to her litigation expenses injury.

The *Lawson II* complaint may be read to suggest Ms. Lawson claims that she suffered from "litigation loss" as a result of two categories of predicate offenses: obstruction of justice, 18 U.S.C. § 1503, and witness tampering, 18 U.S.C. § 1512. [Dkt. No. 1, ¶ 365]. Specifically, as to obstruction of justice, she alleges that Fidelity withheld documents during discovery in *Lawson I*, including through improper redaction under the guise of privilege, and made false statements to this Court in its filings.[10] [*Id.* ¶¶ 278-99, 483.] As to witness tampering, she claims that Fidelity's counsel improperly contacted material

---

[10] As part of her obstruction of justice offense allegations, Ms. Lawson alleges that the SEC withheld documents in response to her FOIA requests and PwC made untrue statements in its report to the SEC. [Dkt. No. 1, ¶¶ 482, 300-04]. But neither the SEC nor PwC is a party to this case. To the extent that Ms. Lawson alleges collusion or improper influence by Fidelity over the SEC's handling of her FOIA request, she fails to plead sufficient facts to support that claim. Obstruction of justice, under § 1503, requires the defendant to act "corruptly, or by threats or force" to influence a judicial proceeding. The only fact Ms. Lawson pleads is that a former Fidelity employee came to work at the SEC, from which she conclusorily suggests that he somehow "played [a] role in the interference of [her] FOIA request." [*Id.* ¶ 122.] This pleading falls far short of stating "a plausible entitlement to relief." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 559 (2007).

witnesses in *Lawson I*, attempted to intimidate a witness at deposition, and caused several witnesses to refuse to testify. [*Id.* ¶¶ 333-43, 487.]  Despite these allegations, Ms. Lawson does not specify what kind of RICO violation, *i.e.*, which section or sections under § 1962, was the cause of her litigation-related injury.  Again, liberally construing her complaint, I am prepared to speculate that only claims under § 1962(c) and § 1962(d) are possible: i.e. that Fidelity alternatively conducted an enterprise's affairs through the predicate offenses, or conspired to do so.[11]

When a civil RICO claim is based on § 1962(c) or (d), "that claim cannot succeed unless the injuries of which the plaintiff complains were caused by one or more of the specified acts of racketeering."  *Camelio* v. *Am. Fed'n*, 137 F.3d 666, 669 (1st Cir. 1998).  This means "at least one of the defendant's predicate acts [must be] *the* proximate cause of the plaintiff's injuries," not just a "but for" cause.  *Id.* at 670 (emphasis supplied).  Proximate cause demands "some direct relation

---

[11] Fidelity's conduct allegedly constituting the two predicate offenses occurred during the course of *Lawson I* and the injury at issue arose only from Ms. Lawson's pursuit of that litigation.  Ms. Lawson thus cannot attribute her litigation expenses to Fidelity's use of any tainted proceeds or income under § 1962(a), or to Fidelity's acquisition or control of any enterprise under § 1962(b).

between the injury asserted and the injurious conduct alleged."
*Holmes*, 503 U.S. at 268.  Any plausible pleading of that causal
link is missing here.

All the predicate offenses Ms. Lawson alleges are based on
the filings and documents produced in the course of the *Lawson I*
proceeding.  For instance, by comparing Fidelity's Statements of
Undisputed Facts with the documents Fidelity produced during
discovery, Ms. Lawson contends that Fidelity made
misrepresentations to the court.  [Dkt. No. 1, ¶¶ 279-83].  Her
allegation of witness tampering may also be inferred from
affidavits and depositions made during discovery.  [*Id.* ¶¶ 337-
43.]

This was all information available to Ms. Lawson at the
time of the initial litigation.  In other words, Ms. Lawson must
have known about the alleged misconduct by Fidelity, and she
could have raised it before this Court in *Lawson I*.  Indeed, Ms.
Lawson had challenged Fidelity's privilege log and document
redaction in *Lawson I* and argued it again in her appeal to the
First Circuit.  The First Circuit ultimately upheld my denial of
her motion to compel the discovery, and opined that it "did not
prejudice Lawson, who was invited to submit narrower document
requests but declined, for the most part, to do so."  *Lawson* v.
*FMR LLC*, No. 17-2220, 2019 WL 11879029, at *1 (1st Cir. Mar. 18,

22

2019).  The lack of prejudice negates any proximate causation inference between the alleged misconduct in document production, whether or not it amounted to obstruction of justice, and Ms. Lawson's pursuit of the *Lawson I* litigation.

Similarly, as to the alleged witness tampering, Ms. Lawson could have sought relief from this Court, for example, through a motion for sanctions under Fed. R. Civ. P. 37.  By choosing not to do so, she necessarily concluded that the alleged tampering of witnesses would not prejudice her in the litigation.  *Cf. Malley-Duff & Assocs., Inc.*, 792 F.2d at 354 n.21 (noting that it was "a question of causation of damages" under RICO when plaintiff "opted not to pursue a motion for sanctions within the context of [prior litigation]" for which plaintiff claimed injury predicated on obstruction of justice).

By contrast, in *Bankers Trust Company*, the plaintiff, Bankers Trust, did not uncover the defendants' fraudulent transfer of assets until after it confirmed a plan of arrangement in a bankruptcy proceeding.  859 F.2d at 1098-99. Bankers Trust was allowed to recover litigation expenses it incurred in connection with a new revocation proceeding it initiated to void the plan, and with respect to two frivolous cases the defendants brought to prevent Bankers Trust's debt collection.  *Id.* at 1105.  Ms. Lawson, unlike Bankers Trust,

did not initiate *Lawson I* because of the alleged obstruction of justice or witness tampering; the underlying conduct occurred during the litigation itself and the facts she alleges in support of the allegation are from the trial record.  Ms. Lawson therefore cannot now argue that she incurred additional litigation expenses in *Lawson I* "by reason of" Fidelity's alleged misconduct that she could have challenged when it occurred.

Because Ms. Lawson's only cognizable injury lacks a causal relationship with any possible RICO violations, her complaint fails to allege a cause of action for Counts I through IV.

4. <u>All Cognizable RICO Predicate Offenses Are Claim-Precluded</u>

As a comprehensive ground for dismissal, I conclude that Ms. Lawson fails to state a plausible claim for the RICO counts because her alleged predicate offenses that may qualify as "racketeering activity" — mail and wire fraud, 18 U.S.C. §§ 1341, 1343, obstruction of justice, 18 U.S.C. § 1503, and witness tampering and retaliation, 18 U.S.C. §§ 1512, 1513(e) — are claim precluded.

a. *Claim preclusion doctrine*

The Supreme Court has recently outlined the doctrine of claim preclusion.

24

> [C]laim preclusion prevents parties from raising
> issues that could have been raised and decided in a
> prior action — even if they were not actually
> litigated. If a later suit advances the same claim as
> an earlier suit between the same parties, the earlier
> suit's judgment prevents litigation of all grounds
> for, or defenses to, recovery that were previously
> available to the parties, regardless of whether they
> were asserted or determined in the prior proceeding.

*Lucky Brand Dungarees, Inc.* v. *Marcel Fashions Grp., Inc.*, 140
S. Ct. 1589, 1594 (2020) (internal quotation marks omitted).
This is consistent with the First Circuit's existing framework.
"Claim preclusion applies if (1) the earlier suit resulted in a
final judgment on the merits, (2) the causes of action asserted
in the earlier and later suits are sufficiently identical or
related, and (3) the parties in the two suits are sufficiently
identical or closely related." *Airframe Sys., Inc.* v. *Raytheon
Co.*, 601 F.3d 9, 14 (1st Cir. 2010).

As Fidelity correctly observes, the first and the third
prongs are satisfied here. *Lawson I* became final no later than
when the Supreme Court denied the petition for certiorari. And
the parties for both cases are identical — Ms. Lawson as
plaintiff against the same affiliated Fidelity entities as
defendants.[12]  The only issue to be resolved is the second prong.

---

[12] Ms. Lawson appears to argue that because she brought this suit
as a class action, the parties in the two suits are somehow
different.  But identity of parties for claim preclusion does
not mean that two lawsuits have precisely the same plaintiffs
and defendants.  What is required is only that the parties at

As to the second prong, "[s]uits involve the same claim (or cause of action) when they aris[e] from the same transaction, or involve a common nucleus of operative facts." *Lucky Brand Dungarees, Inc.*, 140 S. Ct. at 1595 (internal quotation marks and citations omitted). In determining this requirement, courts look to "whether the facts are related in time, space, origin or motivation, whether they form a convenient trial unit, and whether treating them as a unit conforms to the parties' expectations." *Airframe Sys., Inc.*, 601 F.3d at 15 (internal quotation marks and citations omitted).

For *res judicata* purposes, suits involve the same cause of action "if they were founded upon the same transaction, arose out of the same nucleus of operative facts, and sought redress for essentially the same basic wrong . . . notwithstanding any differences in remedies sought or theories of recovery pleaded." *Kale* v. *Combined Ins. Co. of Am.*, 924 F.2d 1161, 1166 (1st Cir. 1991). The cause of action is different when suits "were grounded on different conduct, . . . occurring at different times." *Lucky Brand Dungarees, Inc.*, 140 S. Ct. at 1595.

---

issue for purposes of considering preclusion are parties to both lawsuits, either of which may also involve other parties. This satisfies the requirement that parties be "sufficiently identical or closely related." *Airframe Sys., Inc.* v. *Raytheon Co.*, 601 F.3d 9, 14 (1st Cir. 2010). In other words, a plaintiff cannot evade preclusion as to her claims simply by undertaking to bring in new co-plaintiffs.

b.   *Mail and wire fraud are claim precluded*

Ms. Lawson bases her claim of mail and wire fraud on the circulation of Fidelity Fund's annual fund reports.  [Dkt. No. 1, ¶¶ 472, 473].  Ms. Lawson cites Fidelity's 2008 annual report in the instant complaint to allege that certain statements contained in the report regarding cost allocation methodologies were fraudulent.  [*Id.* ¶ 64.]  But this 2008 annual report is exactly the same one she cited in the *Lawson I* complaint to support her Sarbanes-Oxley Act retaliation claim.  [*Lawson I* Compl. ¶ 10.4.]  Because the two claims grow out of the same operative fact — Fidelity's publication of its annual report — they are identical for the purpose of claim preclusion.[13]  And contrary to Ms. Lawson's assertion, [Dkt. No. 16, 10–11], it does not matter whether she was required to prove mail and wire fraud in *Lawson I* as part of her retaliation allegation under the Sarbanes-Oxley Act.  So long as the 2008 annual report was

_____

[13] To the extent that Ms. Lawson relies on Fidelity's annual reports in later years which she claims contain similar statements as the 2008 report, [Dkt. No. 1 ¶ 65], I find Ms. Lawson fails to state a plausible claim.  Because Ms. Lawson had left Fidelity in 2007 and hence no longer had access to the methodologies described in the later reports, she is unable to "set forth the source of the information and the reasons for [her] belief" that later reports were also independently fraudulent, thereby failing the pleading requirement for fraud under Fed. R. Civ. P. 9(b).  *Romani* v. *Shearson Lehman Hutton*, 929 F.2d 875, 878 (1st Cir. 1991), *superseded by statute on other grounds*, Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737.

available to her then, Ms. Lawson is now precluded from raising new theories of liability or recoveries based on the same fact, "regardless of whether they were asserted or determined in the prior proceeding." *Lucky Brand Dungarees, Inc.*, 140 S. Ct. at 1594 (quoting *Brown* v. *Felsen*, 442 U.S. 127, 131 (1979)).  The use of alleged mail and wire fraud as RICO predicate offenses is thus precluded by the final judgment in *Lawson I*.

> c.   *Obstruction of justice, witness tampering, and witness retaliation are claim-precluded*

As explained above, Ms. Lawson's claims of obstruction of justice and witness tampering are based on the record and information available to her during the *Lawson I* proceedings. She could have challenged them through motions to compel and for discovery sanctions, or even amended her complaint.  Indeed, she undertook such a challenge with respect to Fidelity's redaction for privilege, but that initiative was rejected by me and thereafter affirmed by the First Circuit.  The alleged discovery misconduct and witness tampering by Fidelity in *Lawson I*, although factually different from the acts that gave rise to the proceeding in the first place, were still part of the same "transaction." *Lucky Brand Dungarees, Inc.*, 140 S. Ct. at 1595. These alleged actions were conducted as part of the resolution of the factual disputes underlying *Lawson I;* thus any impropriety could have been dealt with efficiently by the court

in the same proceeding.  Fidelity counsel's alleged misconduct and the underlying facts of the litigation are thus closely related in "origin or motivation" and "they form a convenient trial unit."  *Airframe Sys., Inc.*, 601 F.3d at 15.  Because Ms. Lawson did not make these misconduct-based claims when she could have done so in *Lawson I*, the claims are now barred.  *See rsc, the Quality Measurement Co.* v. *IPSOS S.A.*, 56 F. App'x 639, 645 (6th Cir. 2003) (holding that RICO claims predicated on "witness tampering, obstruction of justice, bribery of a witness" were precluded when plaintiff "knew of these alleged predicate acts well before the [prior trial] started" and the claims "*could* have been addressed there").

Lastly, Ms. Lawson asserts witness retaliation in violation of 18 U.S.C. § 1513(3) because of Fidelity's retaliation against her "after she made claims against [Fidelity] to the Department of labor and [the SEC]."  [Dkt. No. 1, ¶ 489].  This is essentially a rehashing of the Sarbanes-Oxley Act retaliation claim Ms. Lawson alleged in *Lawson I* under a different legal theory.  The present claim is therefore barred by claim preclusion.

## B.   *All Other Non-RICO Counts Are Claim Precluded by* Lawson I

Applying the claim preclusion doctrine outlined in Part III.A.4.a. *supra*, to the remainder of Ms. Lawson's counts, I

29

find they are also claim precluded by the final judgement in
*Lawson I*.

### 1.   Counts V, VI, and VII

In Counts V, VI, and VII, Ms. Lawson alleges that Fidelity
violated the Investment Advisors Act of 1940 (Count V), the
Investment Company Act of 1940 (Count VI), and the Securities
Exchange Act of 1934 (Count VII).  Her claims for these counts
are identical to her retaliation claim in *Lawson I*.  The
statutory rules that were allegedly violated by Fidelity, [Dkt.
No. 1, ¶¶ 510-512], are the same ones she raised in *Lawson I*,
[Pl.'s Suppl. Mem. In Opp'n to Def.'s Summ. J. Mot., p.2, Case
1:08-cv-10466-DPW, Dkt. No. 220].  Further, Ms. Lawson alleges
here that Fidelity falsely advertised the "free Guidance," [Dkt.
No. 1, ¶¶ 512, 515], which was also alleged by Ms. Lawson in
support of her Sarbanes-Oxley Act retaliation claim in *Lawson I*.
[*Lawson I* Comp. ¶ 31.1.]  In other words, the present claims and
the claim in *Lawson I* arose from a common nucleus of operative
facts.  These claims are thus precluded.

### 2.   Counts VIII and IX

In Counts VIII and IX, Ms. Lawson alleges violations of
fiduciary duties by Fidelity with respect to service contracts,
excessive service fees, lower profit margins, and false
advertisement of "free" investment advice.  [Dkt. No. 1, ¶¶ 520-

22; 526-32; 535-36].  But all these violations concern the same
issues Ms. Lawson alleged in support of her Sarbanes-Oxley Act
retaliation claim in *Lawson I*.  [*Lawson I* Compl. ¶¶ 10.2, 31.1,
40.1, 63.2.]  The claims are thus also precluded.

### 3.   Counts X & X[14]

In the separate Counts duplicatively denominated X and X,
Ms. Lawson alleges breach of contract because Fidelity
misallocated operation costs in giving investment advice in
violation of the contractual obligations of the Transfer Agent
contract.  [Dkt. No. 1, ¶ 538].  But the issue of allocation of
services expenses under the contract was at the core of her
Sarbanes-Oxley Act retaliation claim in *Lawson I*, *see Lawson I*
Compl. ¶¶ 37.1, 40.1, 53.1-57, and these claims are thus
precluded.

### 4.   Counts XI and XII

In Counts XI and XII, Ms. Lawson alleges that Fidelity
violated the Sarbanes-Oxley Act and Dodd-Frank Act without
specifying which sections were violated.  [Dkt. No. 1, ¶¶ 542-
43].  To the extent Ms. Lawson bases her claims on Section 806
and Section 922 with respect to whistleblower protection, she

---

[14] Two counts are denominated as Count X.  The second Count X is
further identified as a breach of an implied covenant of good
faith and fair dealing.  The allegations of the *Lawson II*
complaint, however, provide no basis for a plausible claim
Fidelity breached such a covenant.

simply attempts to relitigate not only the same claim but also the same issue as in *Lawson I*.  Those claims as presented in *Lawson II* are precluded.

### 5.   Counts XIII and XV

In Counts XIII and XV, Ms. Lawson alleges that Fidelity violated the Lanham Act Section 43, 15 U.S.C. § 1125 (Count XIII) and Mass. Gen. Laws. c. 266 based on the "free" investment advice which she claims to be fraudulent (Count XV).  [Dkt. No. 1, ¶¶ 546-47; 565-66; 30-31].  This, as noted, was alleged by Ms. Lawson in support of her Sarbanes-Oxley Act retaliation claim in *Lawson I*, and is thus precluded.  [*Lawson I* Comp. ¶ 31.1.]

### 6.   Count XIV

In Count XIV, Ms. Lawson alleges that Fidelity violated various provisions of Massachusetts Rules of Professional Conduct, apparently based on the alleged misconduct by Fidelity's counsel during *Lawson I*.  Just as I discussed with respect to the obstruction of justice and witness tampering predicate offenses, any such misconduct-based claims were known to Ms. Lawson at the time and hence could have been addressed by the trial court.  They are now barred by claim preclusion.

In any event, there is no private right of action under Massachusetts Rules of Professional Conduct, *Doe* v. *Nutter*,

*McClennen & Fish*, 668 N.E.2d 1329, 1333 (Mass. App. Ct. 1996).

For that additional reason, this count must be dismissed.

### IV. CONCLUSION

For the reasons stated above, I GRANT Fidelity's motion
[Dkt. No. 14] to dismiss as to all counts and hereby dismiss the
instant action with prejudice.


*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE